ROCHELLE D. ALPERT, State Bar No. 065037
SHARON R. SMITH, State Bar No. 221428
STEPHANIE L. HALL, State Bar No. 288369
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA  94105
Tel:  415.442.1326
E-mail:   ralpert@morganlewis.com
          srsmith@morganlewis.com
          shall@morganlewis.com

Attorneys for Defendants and Counter-Claimants
STANLEY G. MILLER, aka Stanley Mouse, an individual; THE ALTON KELLEY AND MARGUERITE KELLEY 1999 TRUST, dated November 24, 1999

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIVE NATION MERCHANDISE, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>        vs.<br><br>STANLEY G. MILLER, aka STANLEY MOUSE, an individual; THE ALTON KELLEY AND MARGUERITE TROUSDALE KELLEY 1999 TRUST DATED NOVEMBER 24, 1999; and DOES 1 to 10,<br><br>        Defendants. | Case No: 13-CV-03936 CW<br><br>**JOINT STATEMENT — DISCOVERY LETTER BRIEF** |
| STANLEY G. MILLER, aka STANLEY MOUSE, an individual; THE ALTON KELLEY AND MARGUERITE TROUSDALE KELLEY 1999 TRUST, DATED NOVEMBER 24, 1999,<br><br>        Counter-Claimants,<br><br>        vs.<br><br>LIVE NATION MERCHANDISE, INC.,<br><br>        Counterclaim- Defendants. | |

May 5, 2014

Hon. Nathanael M. Cousins, United States Magistrate Judge
United States District Court, Northern District of California
San Francisco Courthouse, Courtroom A -15th Floor
450 Golden Gate Ave., San Francisco, CA 94102

Re:    *Live Nation Merchandise, Inc. v. Stanley Miller, et. al.,*   USDC Case No. 13CV03936CW

Dear Judge Cousins:

Pursuant to Your Honor's April 23 Order (Dkt. No. 49), Defendants and Counter-Claimants, Stanley Miller and the Alton Kelley and Marguerite Trousdale Kelley 1999 Trust ("Artists") and Plaintiff and Counterclaim-Defendant Live Nation Merchandise, Inc. ("Live Nation"), submit this joint statement.

**I.  Artists' Position**: On April 30, Artists received Live Nation's amended responses and heavily redacted document production, despite Live Nation's agreement to amend by April 25. The parties held an in person conference on May 2, which did not resolve the disputes. Further amended responses and a privilege log served on May 3rd remain deficient as described below.

First, the May 3 amended responses to Requests Nos. 100, 103-104, and 106-110 remain deficient because it is unclear which documents have been withheld and based on which specific objections, as is necessary for Artists to ascertain the parameters of the agreed-to production.  The language of Rule 34 is clear with respect to such partial objections: "An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C); *see, e.g., Pro Fit Mgmt., Inc. v. Lady of Am. Franchise Corp., 2011 WL 939226*, at *9 (D. Kan. Feb. 25, 2011) (failure to comply with Rule 34 left plaintiff "guessing as to whether Defendant has produced all documents, or only produced some documents and withheld others.").  Response to Request No. 105 only asserts boilerplate, unwarranted objections although such payments are relevant to Mr. Furano's motive, bias and interest in this lawsuit.  Live Nation's response that "search efforts continue" raises questions about the sufficiency of its search.  These requests seek discovery relevant documents including to reveal that Live Nation is not the real party in interest and Mr. Furano's motive, bias and interest, and the calculation of damages. Live Nation's responses continue to leave Artists' guessing as to what documents are being withheld.  For example, without all responsive documents, Artists will not know if there has been any subsequent assignment of the claims asserted against them.  Live Nation's claim in this letter that it has produced all responsive documents is contrary to its admission that it failed to upload and produce Mr. Furano's emails and contrary to its responses, which further supports the Court ordering the production of all responsive documents to Requests Nos. 100-110.

Second, Live Nation's amended responses to 100, 103-104, 106-110 assert that responsive documents are being withheld on the basis of privilege and/or work product. Live Nation's counsel has previously represented that he did not represent any entity other than Live Nation, and most recently was unable to identify a date at which he began representing Mr. Furano or Epic Rights. Indeed, Live Nation's counsel asserts, without legal support, that he represents a claim, not a party. Live Nation's privilege log only confirms that there is no attorney-client privilege for communications between Live Nation and/or its counsel and Dell Furano and/or his counsel, *after* Furano's termination from Live Nation.  Live Nation has made no factual showing supporting any attorney-client privilege for communications between Dell Furano and Live Nation, and their separate counsel and/or with Live Nation's litigation counsel, particularly because the claim against

Artists was assigned by Live Nation such that it had no legal interest in the claim and Mr. Furano and Live Nation had their own ongoing dispute. *See, e.g., In re Pacific Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012) (requiring joint interest in legal strategy for litigation). In fact, redacted emails claimed privileged clearly do not concern matters within the scope of Mr. Furano's corporate duties, nor were such facts necessary for corporate representation in this case given Live Nation's assignment. *Upjohn Co. v. US*, 449 U.S. at 394.

The complete lack of clarity as to the parameters of Live Nation's agreed-upon production is further illustrated by Live Nation's assertion that any privileged communications post-dating the January 11, 2013 filing of the initial Complaint need not be logged, despite the fact that the log accounts for multiple communications leading up to the December 27, 2013 execution of the Furano Settlement Agreement. Artists have no grounds for ascertaining whether any additional documents have been withheld on the basis of privilege and left off the log considering some are included on the log.

Last, Live Nation's newly produced documents are littered with redactions based on relevance, privacy and confidentiality objections, which are unwarranted considering the Protective Order and the relevance of the documents on their face. For instance, in one document produced, "Kelly/Mouse" [*sic*] has been redacted, even though in another version of the same document, it is not (compare LNM006068 with LNM006069). This illustrates the severe implications and unreliability of Live Nation's unilateral redactions. There is no basis for Live Nation's unilateral determination and redaction of allegedly irrelevant portions of an otherwise relevant document. *Howell v. City of NY*, No. CV-06-6347, 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007) (parties may not "selectively excise from otherwise discoverable documents those portions they deem not to be relevant"). Artists believe the current Protective Order (Docket No. 39) is sufficient to cover any third-party confidentiality issues.

Conclusion/Request for Relief. The Court should order that Live Nation amend its responses to Request Nos. 100-110 and produce those documents immediately; produce Bates Nos. LNM006022-6123 in fully unredacted form; and produce all documents inappropriately claimed as privileged.

    **II. Live Nation's Position.** Live Nation has complied with its obligations. Response Nos. 101,102, 106, 107 and 108: Live Nation has produced all non-Privileged responsive documents (save for the redacted portions of the settlement agreement on grounds which are the subject of the parties' April 22 letter). Response No. 100 (Furano's current relationship with Live Nation): Live Nation has produced all responsive non-Privileged documents save for documents relating to other artists, which are irrelevant, violate privacy rights of other artists, Live Nation and Furano (Article 1, Section 1 of the California Constitution ("Privacy Rights")) and contain confidential/proprietary information.

    Response Nos. 103, 104, 106 and 110 (all documents re: Furano and this lawsuit, Furano and the contract; communications with Furano re: this lawsuit and Furano's interest in this lawsuit): Live Nation has produced all responsive non-privileged documents except for emails between Live Nation/its counsel and Furano/his counsel regarding the negotiation/drafting of the Settlement Agreement and drafts of the agreement. Documents pertaining to the non-assignment-related portions of the Settlement Agreement are irrelevant, their disclosure would violate the Privacy Rights of other artists, and the requested documents contain confidential/proprietary information. These present the same objections and issues which are subject of the parties' April 22 joint letter with respect to the redacted portions of the Settlement Agreement. That said, Live Nation *has* produced the non-Privileged emails pertaining to negotiation of the assignment (redacting

the privileged and non-assignment-related portions thereof).  As briefed in the parties' April 22 joint letter, Live Nation is entitled to redact the irrelevant and privileged portions of such emails.  (Live Nation has corrected the one redaction error noted by defendants which inadvertently redacted the name of defendants instead of another artist.)  On May 2nd, Live Nation provided a privilege log setting forth the basis for such redactions.  In addition, until the court rules on these issues, it would be unduly burdensome and oppressive to require that Live Nation redact and produce the drafts.  The "search efforts continue" qualification arises because Live Nation just last week discovered that a portion of the responsive emails from Furano's email account at Live Nation, although gathered in a diligent search to respond to earlier discovery requests, inadvertently did not get uploaded to plaintiff's counsel and therefore did not get produced.  Live Nation intends to produce those non-privileged documents to defendants this week.  Response No. 105 (all payments from Live Nation to Furano since 2007):  Live Nation stands on its objections that these documents are irrelevant, would violate Privacy Rights of other artists, Dell Furano and Live Nation and contain confidential/proprietary information.  The assignment portion of the Settlement Agreement is sufficient to show Furano's bias, motive and interest.  None of the requested documents bear on calculating damages.  AEO protection.  As per the parties' April 22 joint letter, Live Nation alternatively requests that the court issue a protective order permitting the withheld portions of the documents to be produced under AEO protection.

Privileged Communications.  Communications between Live Nation and Furano (its former president) regarding this litigation and/or its subject matter are subject of the attorney client privilege and/or constitute non-discoverable attorney work product.  Communications between a corporation's attorney and its former employee concerning activities which occurred during his/her employment are subject to the attorney client privilege.  See, *e.g., In re: Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 658 F.2d 1355, 1361 n.7 (9th Cir. 1981) (extending *Upjohn Co. v. United States*, 449 U.S. 383, 394 n.3 privilege scope to former employees).  Furano was responsible for handling matters involving defendants while he was employed by Live Nation, and his communications with Live Nation's counsel on the subject are privileged.  In addition, at all relevant times, plaintiff's counsel, Phillips, Erlewine & Given ("PE&G"), jointly represented both Live Nation and Furano, which is an independent ground upon which the attorney-client privilege and the work product doctrine rest. The merger agreement provided that, in the event Furano directed, Live Nation was required to pursue rights against certain artists, including defendants, with the proviso that Live Nation and Furano would each pay 50% of the attorneys' fees to do so and that Furano had the right to control the litigation and approve any settlement.  Accordingly, Furano and Live Nation each paid half of PEG's fees from inception (March 2012) in pursuing the claims against defendants.  Both before and after Furano's departure from Live Nation in latter 2012, PEG jointly reported both to Furano, and to Live Nation's Chief Operating Officer and its in-house counsel, on such claims and this action.  Beginning April 2013 (coinciding with the effective date of the assignment), Furano has paid 100% of PEG's fees in this case and PEG has continued to jointly report as above.

Privilege log.  Live Nation has produced a privilege log through the date this action was filed, plus for the redacted portions of the emails produced last week.  Live Nation is not required to produce a privilege log for communications which post-date the filing of this action.  See, *e.g.*, *Gary Friedrich v. Marvel Enterprises, Inc.*, 2011 WL 1642381, *2 (S.D.N.Y. April 26, 2011); *In iSmart Int'l Ltd. v. I-DocSecure, LLC*, 2006 WL 2263910, *3 (N.D.Cal. Aug. 8, 2006).