UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LIVE NATION MERCHANDISE, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>STANLEY G. MILLER, and others,<br><br>　　　　　Defendants. | Case No. 13-cv-03936 CW (NC)<br><br>**ORDER RE: DISCOVERY DISPUTE**<br><br>Re: Dkt. Nos. 46, 53 |

Pending before the Court are two joint discovery letter briefs, Dkt. Nos. 46, 53, in which defendants and counter-claimants, Stanley Miller and the Alton Kelley and Marguerite Trousdale Kelley 1999 Trust ("Artists") seek to compel amended responses to document requests and further document production from plaintiff and counterclaim-defendant Live Nation Merchandise, Inc. ("Live Nation"). This order grants the motion to compel in part and orders further briefing on the issue of privilege.

**I. BACKGROUND**

On January 11, 2013, Live Nation filed a complaint against Artists asserting breach of contract in the San Francisco County Superior Court. Dkt. No. 1. Live Nation alleged that Artists breached a 2007 Agency/Merchandising Agreement concerning certain of Artists' artwork by, among other things, violating Live Nation's exclusive right to solicit licenses

and refusing to provide accountings or make payments to Live Nation. Dkt. No. 1 at 11, 62-67. In response, Artists filed cross-complaints against Live Nation asserting federal copyright infringement under the Copyright Act, 17 U.S.C. § 501 *et seq.*, and violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202, among other claims, and on that basis removed this action to this Court. Dkt. Nos. 1 at 1-5; 1-3 at 10-71. Artists also contend that Live Nation breached the Agency/Merchandising Agreement by, among other matters, failing to provide proper accountings to Artists, and manufacturing, marketing, selling, licensing and/or distributing merchandise bearing Artists' artwork, names, identities, and/or trademarks without seeking or receiving any approval. Dkt. No. 1-3 at 10-71. The case was referred for all discovery to the undersigned Magistrate Judge. Dkt. No. 44.

On April 22, 2014, the parties filed a joint letter brief in which Artists seek to compel Live Nation to produce (1) an unredacted copy of a settlement agreement between Live Nation and its former CEO, Dell Furano; and (2) "all documents responsive to the financial interests in this lawsuit (Request Nos. 100-110)." Dkt. No. 46 at 4. Artists contend that the settlement agreement assigns the entirety of the breach of contract claim asserted by Live Nation in this litigation against Artists, and that the documents sought are relevant to the determination of the real party in interest and the financial interests in this litigation. *Id.* at 2-3. Live Nation opposed Artists' request on the grounds that it has already produced the relevant portions of the settlement agreement and that the remaining portions are irrelevant to this litigation and involve privacy interests of Live Nation and non-parties. *Id.* at 4-6. Live Nation further indicated that it intended to amend its discovery responses. *Id.* at 6.

This Court subsequently ordered the parties to meet and confer regarding the sufficiency of the amended responses. Dkt. No. 49. Live Nation filed amended responses to Artists' document requests Nos. 100-104, 106-110 on April 30, 2014, and a further amendment on May 5, 2014. Dkt. Nos. 51, 52. After meeting and conferring, the parties filed a joint letter brief in which Artists contend that Live Nation's amended responses

remain insufficient and seek to compel further responses and document production. Dkt. No. 53. In addition, as ordered by this Court, Live Nation submitted an unredacted copy of the settlement agreement at issue to the Court for in-camera review. The Court held a hearing to address the pending discovery issues on May 7, 2014.

## II. LEGAL STANDARD

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Furthermore, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* Information is relevant for discovery purposes if it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* However, even when the information sought by the parties in a civil lawsuit is relevant, the Court must limit the scope of discovery if it determines that (1) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or (3) "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C). In other words, the Court seeks to "strike[] the proper balance between permitting relevant discovery and limiting the scope and burdens of the discovery to what is proportional to the case." *Kaiser v. BMW of N. Am., LLC*, No. 12-cv-01311 DMR, 2013 WL 1856578, at *3 (N.D. Cal. May 2, 2013).

## III. DISCUSSION

Artists contend that the amended responses to Requests Nos. 100 and 103-110 remain deficient for several reasons, which the Court addresses in turn.

### 1. **Privilege**

First, Artists assert that Live Nation has improperly withheld responsive documents

on the basis of attorney client privilege and/or work product. Dkt. No. 53 at 2-3. Live Nation contends that the privilege applies both because Furano was responsible for handling matters involving Artists while he was employed by Live Nation as CEO/president, and because Live Nation's counsel jointly represents Furano and Live Nation. *Id.* at 4. In response, Artists dispute whether the communications at issue concern matters within the scope of Furano's corporate duties, and whether the requisite joint interest exists between Live Nation and Furano. *Id.* at 3. Finally, the parties disagree about whether privileged communications post-dating the filing of this action need to be logged. *Id.* at 3-4.

Having considered the parties' joint letter brief and arguments at the hearing, the Court finds that the privilege issues raised warrant further briefing. By May 14, 2014, Live Nation must file a further brief regarding the privilege issues, attaching a copy of its privilege log. Artists have until May 21, 2014, to file a response. The supplemental briefs are limited to 5 pages each. The matter is set for further hearing on May 28, 2014, at 1:00 p.m., which the Court might vacate depending on the parties' submissions.

**2.     Redactions**

Second, Artists contend that Live Nation's document production contains redactions based on relevance, privacy, and confidentiality objections, which are unwarranted considering the protective order in this case, the relevance of the documents, and the concern that Live Nation's unilateral determinations of relevance are unreliable. Dkt. No. 53 at 3. Artists seek an order compelling Live Nation to reproduce the documents in unredacted form. *Id.* Live Nation responds that the redacted documents pertain to the non-assignment-related portions of the settlement agreement that are irrelevant, implicate the privacy rights of other artists, and contain confidential/proprietary information. *Id.* Specifically with respect to the settlement agreement, Live Nation contends that it has already produced the relevant portions which pertain to the assignment of the claims asserted in this action to Epic Rights, and that the withheld portions of the settlement agreement involve issues related to other artists and resolution of confidential disputes

Case No. 13-cv-03936 CW (NC)
ORDER RE: DISCOVERY DISPUTE                            4

between Furano and Live Nation. Dkt. No. 46 at 4-6. Live Nation argues that the non-party artists have privacy interests which must be protected, and that Live Nation and Furano also have privacy interests in how they resolve the disputes between them unrelated to this lawsuit. *Id.* Live Nation further argues that it would give Artists a competitive advantage in negotiating merchandise agreements to see what deal terms other Live Nation artists have negotiated. *Id.* at 6. Finally, Live Nation requests that, if the Court were to require production of the withheld portions of documents, that such production be made subject to "attorneys' eyes only" ("AEO") protection. *Id.*; Dkt. No. 53 at 4.

The Court agrees with Artists that Live Nation's redactions of otherwise discoverable documents here are unwarranted because Live Nation's concern about protecting privacy interests and confidential/proprietary information could be addressed through a protective order. As courts have recognized, this type of unilateral redaction is disfavored, and a protective order could ensure the confidentiality of sensitive information. *See, e.g.*, *Evon v. Law Offices of Sidney Mickell*, No. 09-0760, 2010 WL 455476, at *2 n.1 (E.D. Cal. Feb. 3, 2010) ("Redaction is, after all, an alteration of potential evidence. The Federal Rules sanction only very limited unilateral redaction, *see* Fed. R. Civ. P. 5.2. Outside of these limited circumstances, a party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case."); *Williston Basin Interstate Pipeline Co. v. Factory Mut. Ins. Co.*, 270 F.R.D. 456, 458-59 (D.N.D. 2010) (criticizing "the unilateral editing of documents produced in discovery, particularly when there is a protective order in place, given the suspicion and distrust that it generates, which, in turn, leads to unnecessary discovery disputes and burdensome *in camera* inspections."); *see also Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 617 (N.D. Cal. 2006) (ordering the production of unredacted agreement claimed to contain confidential financial information and trade secrets subject to protective order); *Holman v. Experian Info. Solutions, Inc.*, No. 11-cv-00180 CW (DMR), 2012 WL 2501085, at *6 (N.D. Cal. June 27, 2012) (ordering the production of documents in

unredacted form where the redactions were claimed to protect non-responsive, highly sensitive business information, and finding that such information was sufficiently protected by the protective order in the case).

Here, the dispute regarding the redacted settlement agreement between Live Nation and Furano illustrates the delays and burden imposed on the Court and the litigants by the practice of unilateral redaction. Artists assert that Live Nation initially objected to producing the agreement, and only produced the current version after significant meet and confer efforts by Artists' counsel, and after first producing an even more heavily redacted version of the agreement. Dkt. No. 46 at 2-3. Live Nation's assertion in response that Artists "have been well aware of Furano's involvement in this litigation" does not excuse its failure to disclose a relevant document sought in discovery. *Id.* at 5. The Court has reviewed the settlement agreement in camera and finds that the redactions in the most recently produced version of the agreement are overly broad as they include defined terms and other information that is useful in understanding the relevant portions of the agreement, as well as some information that does not implicate privacy or confidentiality concerns.

Accordingly, the Court orders Live Nation to produce an unredacted version (except for any redactions made on the basis of privilege) of the settlement agreement and the other documents it has produced in redacted form. The production must be completed within 7 days after the Court issues a protective order that includes an AEO protection. By May 9, 2014, the parties must meet and confer and file with the Court an agreed proposed protective order containing AEO protection, or a joint letter brief if no agreement has been reached. The Court does not make a determination here whether an AEO designation is appropriate for any particular documents produced by Live Nation.

Live Nation indicates that it has withheld the production of certain documents pending a determination by the Court on the redaction issue. Dkt. No. 53 at 4. Since the issue has now been resolved, Live Nation must produce the withheld, non-privileged documents by May 21, 2014.

### 3. Document Request No. 5

Artists move to compel the production of documents in response to request No. 5 which seeks "ALL DOCUMENTS RELATING TO any payments or scheduled payments to Dell Furano from YOU since 2007." Dkt. No. 50 at 26. Artists argue that such payments are relevant to Furano's motive, bias, and interest in this lawsuit. *Id.* Live Nation responds that the assignment portion of the settlement agreement is sufficient to show Furano's bias, motive and interest, and objects that these documents are irrelevant, would violate privacy rights of other artists, Furano and Live Nation and contain confidential/proprietary information. *Id.* at 4.

The Court finds that, in its current form, the burden or expense of document request No. 5 outweighs its likely benefit. As Artists' counsel acknowledged at the hearing, the request should be limited. Accordingly, the Court limits the request to any payments or scheduled payments to Furano related to Artists or this litigation. By May 21, 2014, Live Nation must respond to the request as limited and produce any responsive, non-privileged documents.

### 4. Lack of Clarity as to the Scope of Production

Finally, Artists contend that Live Nation should be compelled to amend its responses because it is unclear which documents have been withheld and based on which specific objections. Dkt. No. 53 at 2. Artists further argue that Live Nation's qualified response that "Live Nation has otherwise produced all non-Privileged documents responsive to this request so far as known, but search efforts continue" raises questions about the sufficiency of its search. *Id.*; *see e.g.*, Dkt. No. 52 at 9:22-23. With respect to the "search efforts continue" qualification, Live Nation responds that it was necessary because a portion of responsive emails inadvertently did not get uploaded to Artists' counsel but is now in the process of being produced.

The Court agrees that the assertion of boilerplate objections makes Live Nation's responses ambiguous and unclear as to what documents are being withheld. *See* Fed. R.

Civ. P. 34(b)(2)(C) ("An objection to part of a request must specify the part and permit inspection of the rest."). By May 21, 2014, Live Nation must complete its document production and amend its responses to identify the parts of the requests to which each objection pertains and which documents are being withheld.

Any party may object to this non-dispositive discovery order within 14 days under Federal Rule of Civil Procedure 72(a).

IT IS SO ORDERED.

Date: May 9, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge

Case No. 13-cv-03936 CW (NC)
ORDER RE: DISCOVERY DISPUTE

8